First case on today's docket is cause number 22-10077 and it is consolidated with number Is the appellant ready to proceed? All right, appellee ready to proceed. All right, you may you may begin. Thank you, Your Honor. May it please the court. Case in Ross for the United States. At issue in these appeals are a pair of preliminary injunctions that prohibit the Navy from enforcing the military's August 2021 requirement that all service members be vaccinated against COVID-19. But pursuant to a congressional directive and over an objection from the Department of Defense, Secretary Austin has rescinded that requirement and the Navy has issued guidance formally canceling the four policies that the district court had prohibited the Navy from enforcing. Because those policies no longer exist, the preliminary injunctions afford the plaintiffs no practical relief. This court should accordingly follow its routine practice and vacate those injunctions because these appeals have become moot. So is this based on the distinction between removing and separating people altogether versus merely not deploying them on certain projects on certain tasks? I think the answer is the same, Your Honor. So first, the Navy is not separating any service members because they're not vaccinated, but you're still wanting to not deploy people based on this alleged discrimination. Those questions are hypothetical and speculative, and none of the plaintiffs here have identified any action taken against them on an ongoing basis because they're not vaccinated. So any of that's what this whole case was about. Sorry, on an ongoing basis. So moving forward, because of the Navy policies would have prohibited taking any adverse action against the plaintiffs while their requests for religious exemptions were pending. And as the district court recognized both in its January 3rd injunction and in the March 28th injunction, no adverse actions have been taken against the plaintiffs because their appeals had not been fully adjudicated by the Navy. So none of them faced any. You had a policy that allowed for, indeed mandated, I think, all of these various sanctions and all that's been pulled down, as I understand it, is everything except for the deployment. That's not quite right, Your Honor. And in fact, there was no mandate that service members be separated because they were not vaccinated. There's a very extensive administrative process to consider whether to separate a service member because they're not vaccinated. Additionally, it's not clear at this point whether any of the plaintiffs will suffer any ongoing consequences because of their vaccination status. Any commander's decision on an individual basis with respect to a particular deployment, assignment, or operational decision is not one that this court can evaluate right now because we don't know those circumstances. And religious liberties, fact and context specific questions, are importantly answered on a case-by-case basis because we don't know the government's compelling interest for a particular deployment or assignment or whether— You've got unquestionably a live controversy at the time of the complaint being filed. And as you just alluded to, this change is a policy you all vociferously oppose. So it sort of seems weird to say that there's no controversy anymore. But the policy no longer exists, Your Honor. So even if the Department— Is there any assurance in the record that there will be no deployment decisions made on the basis of vaccination? So two answers. For one, this court has never required such an assurance. In Spell, Amawi, and Freedom for a Religious Foundation, which issued just last week, there's no requirement that the government specifically state— I thought the standard was it has to be absolutely clear that the problem will not recur. When the mooting actor— I think the Supreme Court's described it as stringent. That's accurate. But when the mooting actor is the government, then there's a presumption that the government's acting in good faith and not operating in a way to moot the outpending litigation. So there's no indication in this record that the government has deliberately mooted the case to avoid this court's adjudication of the merits. In fact, quite the opposite. But I can say, with respect to— as the Navy's representative before this court, that given the prevailing public health guidelines and the state of the virus, there is currently no intention to require universal vaccination of all service members. So that's, of course, not in the record. But I can provide that assurance to you as the representative of the Department of Defense before this court. From that standpoint, what's the harm in keeping the PI and you can proceed on the merits in trial court? I think that's because, as an institutional matter, Your Honor, this court frequently vacates injunctions or orders on preliminary injunctions. I think that the court's decision in Spell v. Edwards is instructive on that point. The governor of Louisiana had issued stay-at-home orders for COVID-19, which were challenged by a pastor in Louisiana. And the district court denied a preliminary injunction. But this court vacated the denial of that relief on appeal because it had become moot, because the stay-at-home orders had expired. The same logic applies here, if anything, with more force, because the preliminary injunctions operate against public officials and prohibit them from taking particular actions under policies that no longer exist. I think the court's decision in Freedom for a Religious Foundation is particularly instructive on this point, issued just over a week ago and for which we issued a letter to the court. There, the court specifically explained that the public interest is impeded when a court's injunction runs against government officials for a policy that doesn't exist anymore. The same logic applies here. So on this mootness point, Counsel, here the government that ordered the rescission was the Congress. It seems clear to me from the record that the President and the Secretary of Defense were unhappy about it, went along with it, as one does when Congress passes a law. But they went along with it, but they were unhappy about it. And in the very document ordering the rescission, the Secretary of Defense explicitly recognized that vaccination status could be taken into account in deployment, in operational decisions, and in assignments. So why shouldn't I look at that and say, well, there's been a rescission of this August 24th letter, but nothing in that rescission prevents the Navy from doing the very same thing tomorrow? And why doesn't that bear on voluntary cessation? Sure. So I think there's a couple of answers. There's a lot baked into your question, Your Honor. First, in Hovely, Louisiana, this court held that even, that the governor of Louisiana was not the moving force in the mooting legislation. So that would not preclude a determination of mootness. That's the, I think, the first legal point. The second is the mootness point, which is that if, on an ongoing basis, individual commanders consider service members' vaccination status for particular deployment or assignment decisions, that's not a controversy that's presented here, because those decisions haven't been made yet. So those hypothetical and speculative decisions in a future case might be litigated once an adverse action is taken. But to be clear, Congress's provision in the Act that ordered the rescission only ordered the rescission of a specific policy. It did not prevent the Navy or any other branch of the military from instituting the very same mandate tomorrow. That's accurate. But as I explained to Judge Hove, as the Navy's representative before this court, I can represent that under the prevailing public health guidelines and understanding of the virus, there is no current intention to institute a universal vaccination requirement. And my last question is the rescinded policy of August 24th, 2021, made reference to any administrative or other exemptions established in military department policy. And I take that to be a reference to the exemption, religious, medical or administrative exemption policy that was being litigated in the lower court. Isn't that right? I believe that's correct. Okay. Now, it seems to me that the thrust of the district court's injunction here is that that exemption policy was a sham. It wasn't actually an individualized consideration of religious exemptions as required by RFRA, but instead it was a boilerplate rubber stamping of denials. Now, so I mean, those exemption policies that the military was following haven't been rescinded, have they? Just this particular vaccine mandate. So the administrative process to consider a religious exemption request is still in place. So is it the same one that's reflected by the record in this case and all the letters that we can read in the record showing here's why we're denying the exemption, all that? Well, the secretary's January rescission memo specifically states that all subsequent requests for religious exemptions will be essentially put on hold because there's no underlying requirement. Yeah, I know, but the military is going to follow the same policy going forward. I don't see anything in the record that would indicate otherwise, and they had an established policy they were following. To the extent that there's a process for considering religious accommodation requests, that's correct. The so-called 50-step process, right? I know you dispute that the 50 steps are really 50 steps, but it's a 50-step process. Sure, but I think also the existence of a process vel non is not dispositive for this court's order. Well, the character of the process was pretty important for the district judge that it wasn't individualized. But I think there, again, this court's decision in Freedom from Religious Foundation is, again, helpful on this point because there, there was actually a process to consider applications for displaying exhibits at the Texas State Preservation Board or before the Texas State Preservation Board. And this court recognized that when the board rescinded the underlying rule that was being challenged, regardless of whatever policy or process there was for considering those applications would not change the mootness of the case because, as is true here, there's no underlying requirement. Thank you. Can we talk about the provenance of this policy just from the very get-go? Do I understand this all originated on July 29, 2021? Does that sound right to you? I believe it's actually in August. I'm referring to the presidential-level decision. That's what sort of started this whole process, I thought. I'm sorry, to issue the vaccination requirement in the first instance? Right. I believe there was, I mean— Are you saying there was something before or something after? No, no, sorry, apologies. Yeah, I'm not trying to trap you. I'm just— So, the secretary had stated in August 2021 to issue a vaccination requirement. Right. Wasn't that in response to the president's directive on July 29, 2021? This is in the briefing. Right, right. I suppose that's accurate, Your Honor. Okay. That decision, as I understand it, was about federal employees, federal contractors, families, kids, state and local governments, schools, and also the military. I mean, in other words, it was about a vaccine policy for the entire country. So, at least large percentages. So, this was not a military decision. This was a social policy decision. I don't think that's accurate, Your Honor. I think it's, as the record actually— I mean, it's literally, the July 2021, I don't mean to interrupt, but this is not a military decision. There's no discussion of military readiness or anything. It's a perhaps debatable or worthy vaccine mandate policy discussion we can have, but it doesn't sound in militariness. It doesn't sound in necessity or military readiness. It sounds in social policy. I don't think that's the policy that's been challenged here, and that's not—and certainly not— But it's what led to all these policies. That might be true, but any politician's remarks on the reasonableness or importance of a particular policy is not necessarily something that will change, at least particularly here, the mootness decision. But I thought you all were invoking the presidential power as something that warranted deference. That's certainly how some of these previous cases have discussed this dispute, that this is deference to the president. I think the— I guess what I'm wondering is, is this deference to the president in his military capacity or in a sort of more social policy type setting? Certainly the former, Your Honor. The cases discussing deference to the military, Orloff, Gilligan, et cetera, explain the importance of deferring to the military's expertise in making— Right, but is the president exercising that policy when he talks about kids in schools and federal contractors and employees? I don't think so, Your Honor, but that's not at issue here. But the policy that's been rescinded in this case is based on congressional action. That's true. And, yeah, I don't really have much more to say on that point. Can I ask about the—because I don't think you all had a chance to respond to the December—this is the other side's—December 5, 2022, 28J. Does this sound familiar? This is the statement by the commander from the Naval Special Warfare Group 11. From what I can tell, this is somebody high up, or at least reasonably high up in the military, essentially suggesting that the policy of vaccination is bad for military readiness. So I guess it is worth reiterating that that policy no longer exists. So to the extent you agree or disagree with that commander's personal assessment, that has no bearing on the mootness of this case because the policy— You're big on mootness today. Well, I mean—respectfully, Your Honor, that's because the appeals are moot. But— I just want to give you a chance to respond if you wanted to. Sure. It's also the case that one individual commander's personal assessment of a military policy is not one that the court should necessarily consider. I mean, that commander's leadership would have determined the appropriateness of a vaccination for that particular service member. I believe it's SWCC3. And that would not have any bearing on the ultimate decision by military leadership of whether his vaccination would be important as a member of the Naval Special Warfare community. But, again, I would reiterate that his personal assessment has no bearing on the case now, particularly because there's no case or controversy with respect to that particular religious exemption request. Absent further questions, I will save the remainder of my time for rebuttal. Thank you, counsel. Ms. Hacker. Yes, Your Honor. May it please the Court. Heather Hacker for Appelese. When the plaintiffs enlisted in the Navy, they vowed to support and defend the U.S. Constitution. But the Navy, unfortunately, has shirked its responsibility to do so here. The Navy is unlawfully discriminating against the class members' sincere religious beliefs by applying a sham process for religious accommodations that does not comport with RFRA, as the DoD IG recently acknowledged. That harm continues today because even though the mandate has been repealed, the Navy will continue to use vaccination status as a requirement for the class members to be able to fulfill their job duties. But it's even worse now because the Navy will not even consider the plaintiffs' requests for religious accommodation anymore. This case and this appeal is not moot for the simple reason that the preliminary injunctions at issue do not enjoin the mandate. They enjoin policies that have not been repealed and will continue to be used by the Navy to inflict constitutional injury on the class members. I'm going to start by refuting the defendants' mootness arguments, and then I'll move on to addressing the merits if I have time. I want to start right off the bat by disputing what Mr. Ross said. I think it's wrong to say that the repeal of the mandate has magically erased all of the Navy's many policies regarding COVID vaccination. That is simply not true. And to see that that's the answer, all we have to do is look at the DoD memorandum, which specifically states that all other guidance related to the mandate is still in place. That includes the ability of commanders to make deployment, assignment, and other operational decisions based on vaccination status. Moreover, that memorandum makes clear that the secretaries of the military departments, including Secretary Del Toro, are to cease reviewing religious accommodation requests. All NAV 923, which was also included with defendants' supplemental letter brief regarding mootness, similarly says that the Navy will continue to make deployment, assignment, and other operational decisions using vaccination as the criteria. So I don't think it's fair that Mr. Ross would be able to represent here that the Navy will not consider vaccination in making those decisions because the policy clearly states that they will. Moreover, Secretary Del Toro— You have evidence that they have. Well, this is all kind of a new thing here, Your Honor, but I would like to dispute Mr. Ross's assertion that the plaintiffs have no evidence that they're continuing to suffer harm because that's not true. All of the class members pursuant to NAV Admin 9322, which we discussed on page 14 of our brief, they've all been transferred to non-operational units because they're not vaccinated. And the policies that the district court did enjoin—so we're talking about the MANMED 22121 and 25621—all that the new NAV Admin talks about is that no new adverse actions based on the guidance will be begun. But that guidance specifically does not rescind those policies. It rescinds another policy. So I think that reading of it, if it rescinds one policy and it doesn't specifically rescind those, that means that it's going to keep those in place. Now, what does that mean for the class members? Well, those policies—you know, if the plaintiff's requests for religious accommodation are no longer going to be even considered, they'll be considered vaccine refusers. And under those policies, the Navy can continue coercing vaccination by withholding earned promotions, defrocking officers— But if we make a determination that these injunctions are moot, is there anything that would prevent you from litigating the issues you raise now before the district court? Well— Because that determination doesn't moot the entire case. It just moots the injunction as to these policies. We certainly could litigate these issues before the district court, Your Honor. But I'd like to push back on the idea that these injunctions are moot because in the actual language of the injunctions, which is at 2419 and 4155 of the record, they don't enjoin the mandate. It says—and this is the first injunction— NAV Admin 22521, Trident Order 12, which that one has been repealed, and NAV Admin 25621 to the plaintiffs. Defendants are also enjoined from taking any adverse action against plaintiffs. And then the class-wide injunction similarly states defendants are enjoined from applying MANMED, NAV Admin 22521, Trident Order 12, and NAV Admin 25621. So those policies are still in effect, Your Honor. Those policies can still be applied against the plaintiffs. And the plaintiffs have already suffered— So this injunction doesn't deal with those policies. Is that what you're saying? So the mandate itself, the repeal of the mandate— The injunctions that have been issued already by the district court. Yes, these are injunctions that have already been issued. Don't treat those other policies. Yes, against those policies. And those policies are still in place. They have not been affected by the repeal. Yes, those injunctions don't deal with the other policies. Is that what you're saying? I'm trying to understand what you're telling me. Okay, I'm sorry. Yes, these injunctions enjoin only those policies. And the injunctions are not moot because those policies are still in effect. So you want us to issue a broader injunction? You want us to issue an injunction? No, Your Honor. What relief are you seeking here then? If the injunctions that are the subject of this appeal don't do what you want them to do, what are you asking us to do? So I think you could affirm both injunctions because both of those injunctions are still doing work here. Those injunctions are still prohibiting the application of those policies, which still exist and have not been repealed, against the class members. If we agreed with you that the injunctions are not moot and we were inclined to affirm, would we nonetheless have to alter the injunctions in some way to reflect the congressional rescission of certain policies? So the injunctions currently as written do not, I mean, the opinions obviously discuss the mandate, but the injunctive language itself does not refer to the mandate. The court certainly could explain that in its opinion or in its injunctive language, but the injunctions, I want to be clear, the injunctions are still doing work here, so there would be a reason to affirm them. So those class members are still suffering harm, and a big one that is provided for by those same policies is if a class member has failed to earn bonus pay or special operations pay and that a lot of them are in this situation because they were removed from their operational commands and they're not getting credit for that anymore, the Navy under those policies can recoup that money from these people. So this is pay that they've already received, that their family has already relied on, and the Navy can come back and try to take that away. Same thing for people who went to school that the Navy paid for, especially in relation to their job in the Navy. The Navy can come back and ask them to pay back those funds that they paid for that education, and a situation that the SEALs specifically are in. How much money are we talking about? I'm trying to remember what I read, but in terms of all this recoupment of past costs, it's not just denial of pay or denial of jobs going forward. It's a clawback. Right, Your Honor, yes, and that's why it's very significant, and it depends on this whole thing. What amounts are we talking about, if you know? So in the case of the SEALs, one of the things that they can recoup is the cost of training. It costs a million dollars to train a SEAL. So I think there's some discretion. Is that further military readiness to come after a SEAL to charge them a million dollars? We've heard a lot of talk about how this is an important policy to further military readiness. Right. Well, as Your Honor mentioned— I imagine the answer is no. No. No, I don't think so. I mean, and I think it makes it clear, as Your Honor already touched on, that endorsement from the commander of the reserve unit of the SEALs, he makes clear that the policy was actually detrimental to military readiness because he's lost so many people, and people that he wants to be able to deploy but for this mandate, and he can't. And, you know, specific to SWCC-3, which was the person he was talking about, he was saying, you know, this person is very qualified. I want to be able to deploy him. I think he's at low risk. You know, these are the, like, elite warriors of our country. They're basically elite athletes. They're not at high risk for COVID, especially with, you know, he goes through at length, you know, all of the current science and everything, and he says, you know, this is impeding my ability to do my job as a commander. And that perspective is not just a personal opinion of the commander. It is the relevant consideration. According to the Vice Chief of Naval Operations, Admiral Lesher, as he testified in his deposition, he said that when you're looking at these accommodation requests, he thought that the commander's perspective is the most important because the commander's perspective is what is the facts on the ground. That's the person that knows who you're talking about, knows where they fit into the unit, knows what their skills are, knows what their advantages are, knows all the rest of the people that he's working with here, knows the objective of the mission very closely. You know, these high-up guys in D.C. at the Pentagon, they're not intimately familiar with all of those details, and so that's why Admiral Lesher said that those considerations are very important here. With respect to Admiral Lesher, has the record changed since the stay motion before the Supreme Court? Yes, Your Honor, significantly. So the actual Supreme Court stay opinion was very brief, but there was a concurring opinion by Justice Kavanaugh, and he specifically referred to Admiral Lesher's declaration, and the Solicitor General's briefs also relied very heavily on Admiral Lesher's declaration. But as we discovered when we deposed Admiral Lesher, he admitted that he really had no personal knowledge of the assertions that he made in that declaration. The people who would have the details of the things that he was testifying to, he did not meet with them before he signed the declaration. We asked the Navy to produce the documents that he relied on, and they gave us some documents. We asked him about them, and he said, well, I didn't look at any of these things before I signed the declaration. Is that a part of the record before us? Yes, Your Honor. That's all part of Admiral Lesher's testimony that the court supplemented the record with here. Do you have a record for that? I'm sorry? I don't, but I know it's in the higher portion of the record, the later portion that's in it. It's at the end. I'm sorry, Your Honor. But another fact about the record changing significantly since the Supreme Court considered the case, that was in March of last year, and I think that the situation with the virus itself has changed significantly since then as well. You know, now the Navy is saying that they, even they've acknowledged that based on the science, that they're not going to require everyone to be vaccinated, but that's different from what they were saying before, where if they didn't have everyone vaccinated, that would be a detriment to worldwide deployability and would harm national security and mission readiness and all of this parade of horribles that they had told us before, and I think the science shows that that is simply not the case anymore. So it's a very different situation than the Supreme Court looked at in March of last year. My understanding is the focus of the district court's opinion or opinions or orders in this case was on the deficiencies in the exemption process, that RFRA requires an individualized case-by-case consideration of religious exemptions, and the evidence of the process was that this was nothing of the kind. And so my question is what does the rescission of the mandate change about the exemption, the existing exemption process, if anything? Does it make it better? Does it make it worse? Does it leave it alone? That's what I'm trying to understand. So I think it makes it worse, Your Honor, because the DOD memorandum states that the, and also the new NAV admin also state that the requests for religious accommodation, they're not even going to be considered anymore. So they've submitted these. A lot of them have been sitting there for well over a year, and they're not even going to consider those requests anymore. So we have a situation where they're still, by their own admissions, going to still apply these. I mean, Secretary Del Toro himself said we're going to have, as a result of this, we're going to have some people that can be deployed and some people that can't. So obviously they're going to make that a criteria for deployment. Those are his own words. So you're going to have this requirement here for people to be able to do their job duties, and then the Navy is not even going to consider accommodation requests anymore because there's no mandate. I think the situation is worse, actually. It went from a 50-step process to a zero-step process. Exactly, Your Honor, exactly. So I think we discussed the mootness issue. I would just like to draw the Court's attention to the speech-first case because I think that that case is helpful here, where it was a similar factual situation where the university there had repealed some of the objectionable policies, but it still had a policy in place with an overbroad definition of harassment. And so this Court there said that that was only partial voluntary cessation, and so the case was not moot. The Court went on to discuss, even if it had . . . But nobody here is arguing that the case is moot. Isn't that right? I've . . . You're not arguing your entire case is moot. You're talking about these injunctions. I believe that DOJ is arguing that the entire case is moot. We'll see what they say today. They're supposed to file something in the district court asking the court to dismiss the case as moot, and I believe that's what they said they planned to do. But . . . Well, the logic of their position would lead you there. I'm sorry, Your Honor. The logic of their position would lead you there, I would think. They're saying none of these policies exist anymore, so . . . Right, yes, yes. Yeah, that's what they're claiming. The point is the burden is on them, right? Given that there was a live controversy and the issue is now mootness based on the government's unilateral conduct, I thought our court and the Supreme Court has been repeated that this is a stringent, heavy burden on their part. Yes, the . . . They have to prove mootness, not the other way around. Right, exactly. They have to show that it's absolutely clear that the conduct will not recur. And as I believe the Court pointed out earlier, the fact that the NDAA does not prevent them from instituting a new mandate tomorrow, and the fact that the Navy and the DoD itself disagrees with the fact that they were forced to repeal the old mandate, I don't think that they can make that showing here. As you mentioned, that's a high bar, and I don't think they can meet that with those facts. You know, even if the harm had stopped, which I think we've discussed the fact that it has not, we believe that the harm would be capable of repetition because, like the case of Roman Catholic Diocese, the Navy could just reinstitute that policy again. So the case is clearly, and these injunctions and this appeal are clearly not moot. I have a couple of minutes left, and I'll turn to the merits, unless the Court has any further questions about mootness. We've touched a little bit on the process. I did want to say some things about the abstention issue and also class certification. I think that the Court, in the stay opinion, the Court already questioned whether MNDA has had any continued applicability in the RFRA context. This Court, to the best of my knowledge, has never applied MNDAs in the RFRA context, and I don't think it would make sense to because RFRA is a super statute and MNDAs is a judge-made abstention doctrine. But I think that the Court here could specify that MNDAs does not apply in the RFRA context as the Sixth Circuit recently did in the Doster case, noting that it had never been applied in a case where there was a statutory right of action. And then just one quick note about class certification. We contend that DOJ waived or forfeited the argument that the class certification should be before the Court because they didn't brief jurisdiction. It's not automatic. They haven't cited any cases that show that review of a class certification is automatic when there's an appeal of an injunction. And they failed to brief pendant jurisdiction, which this Court has held is rarely exercised. So it requires more of a showing than one sentence and one case that was decided before Rule 23F, which requires them to specifically permission to appeal. With that, unless the Court has any further questions, I'll reserve the rest of my time and just ask the Court to affirm both objections. Thank you. Thank you, Ms. Hamm. Rebuttal. Thank you, Your Honor. I think I'll start, unsurprisingly, with mootness and then just address a few of the points that plaintiffs made in response. First, I can say without reservation that the policies that the District Court enjoined here, four specific policies, no longer have any operational effect. The Secretary of the Navy is subject to the authority, control, and direction of the Secretary of Defense. The Secretary of Defense has declared that there is no vaccination requirement and service members cannot be subject to adverse actions because they are not vaccinated against COVID-19. Any action that the Navy has taken that is at all in tension with the Secretary of Defense's statement is inoperative and ineffective. Does that include deployment decisions? That would be a separate question, Your Honor, in a subsequent case. We don't know those hypothetical situations that might take place down the road. That would not defeat the mootness. I don't understand your answer. So that's because any particular decision that an individual commander might make with respect to a service member's fitness to serve in a later case would be something that could be subsequently litigated. But those questions are purely hypothetical right now and would not defeat the mootness. Bottom line is it could happen, is what you're saying. Sure. Your point is just it's not part of this case. Just as the governor of Louisiana could institute another stay-at-home order in Spell. You've mentioned Spell many times. I'm looking at Spell. Spell's a very different case. That's a case where the order had a built-in expiration date, whereas here this is, as you just said at the outset of your remarks, this was under the opposition of the department. But there was nothing stopping from the governor of Louisiana from instituting another stay-at-home order. And, in fact, this court explained in Freedom from Religious Foundation that where it is true that normally the party who is arguing for mootness has a high burden to establish as much, mootness is the default when there is a legislative change mooting the policy that has been challenged. And that's a direct quote from that decision. Mootness is the default. And plaintiffs also invoked the Speech First decision. And I think footnote 7 of Freedom from Religious Foundation makes clear that the context of Speech First were specific to universities. It's particularly voicing some frustration or concern that university presidents might change their mind in response to litigation and say one thing or another in order to moot the case. But the court explained that those kinds of decisions with respect to universities are very different than when with respect to governments and there is a legislative change mooting the underlying policy. Second, just with respect to monetary damages, if anything, that underscores that additional litigation might proceed in district court, but that is not a question that would defeat mootness of these appeals. It's also worth noting that plaintiffs are unable to identify any amount that's actually at issue. I want to follow up on the earlier discussion. The government's position that the appeal is moot or the entire case is moot? The position before this court is that the appeals are moot. Okay, but what about... The district court, are you going to take the position that that case is moot too? That is a question best resolved in the district court. You can't represent to us that the case in the district court is moot or not moot. The government hasn't made a filing yet in that case and so I think it would be premature for me to make any representation to this court before we are actually able to make that filing. So we have a number of hours before it's actually due, so I don't want to get in front of those litigators. But irrespective of that, just to return to the training point, I just want to point to page 1874 of the record in which the chief of staff of the Naval Special Warfare Command specifically stated that he is unaware of any policy in his 27 years of service that would require a service member in the Naval Special Warfare Command to repay trainment costs in the way that the plaintiffs have described. So yes, it is expensive, as you might expect, to train a Navy SEAL, but he is unaware of any circumstance in which a SEAL is subsequently involuntarily separated that he or she would be obligated to repay those training costs. That is simply inaccurate, just as a matter of Navy policy. Well, if I understand what you're saying, let me see if I understand it. The rescission of the August 2021 policy, are you saying that would prohibit this action to require repayment of training costs? That's my understanding, Your Honor. Based on not being vaccinated against COVID? That's my understanding, Your Honor, yes. And indeed, the Secretary's rescission memo makes clear that any adverse actions on any service member's record that was taken because they had not complied with the vaccination requirement will be removed from their records. And that's beyond the requirement Congress had instituted in directing the Secretary to rescind the requirement. So whereas Congress only required the military to take down the vaccination requirement, the Secretary has gone one step further and explicitly provided that all adverse actions on service members' records, be them fitness reports or certain letters of reprimand, will be removed from their records. Just to finalize, because I'm really confused now on the recoupment issue, plaintiffs have, I think, made clear in their complaint, as well as in their papers, that recoupment of a million dollars worth of training was absolutely threatened in this case. Are you saying that they are just completely wrong on that? Or are you saying just on a going-forward basis you're not going to do that going forward? I'm saying they're completely wrong on that, Your Honor. And it's unprecedented, is what I heard. Correct. All right. Thank you, Counsel. With that, we urge the Court to vacate the injunctions and dismiss these appeals as moot. Thank you.